DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a final judgment entry of divorce entered by the Lucas County Court of Common Pleas, Domestic Relations Division. Prior to the entry of that judgment, the parties, plaintiff-appellant Salma G. Mikhail and defendant-appellee Wassef E. Michael Mikhail, entered into an agreement with regard to the division of the their personal property and household furnishings. They then submitted the remaining issues to the lower court for its determination. In its final judgment entry, the lower court incorporated the parties' consent judgment entry, determined that appellee had not committed financial misconduct, divided the parties' marital assets and liabilities, awarded appellant spousal support, and determined that appellant was not entitled to an award of attorney fees. From that judgment, appellant now raises the following assignments of error:
 {¶ 2} "I. Trial court's failure to recognize gender equality in failing to make a distributive award when husband exerted exclusive control over all marital investments, disregarded wife's repeated objections to his investment strategy, and continued to take unreasonable risk, was an abuse of the trial court's discretion.
 {¶ 3} "II. Failure to find financial misconduct pursuant to R.C. 3105.17.1(E)(3) was against manifest weight of evidence and an abuse of discretion when husband has exclusive control over the marital investments, conceals a reckless investment strategy from wife, then upon wife's discovery of strategy, promises to terminate such strategy, and then without wife's knowledge, increases his reckless investment strategy, resulting in significant dissipation of the marital estate.
 {¶ 4} "III. Failure to find financial misconduct pursuant to R.C. 3105.17.1(E)(3) was against the manifest weight of the evidence, when evidence clear [sic] that husband, having exclusive control over the marital investments, invested in a reckless manner over wife's express and repeated objection, and against the advice of the parties' professional broker, resulting in significant dissipation to the marital estate.
 {¶ 5} "IV. Error at law for trial court to require a finding of intentional misconduct, wrongdoing or wrongful scienter to establish financial misconduct pursuant to R.C. 3105.17.1(E)(3).
 {¶ 6} "V. Error at law for trial court to require a showing that defendant-appellee's conduct was intended to dissipate plaintiff-appellant's share of marital estate, and that defendant personally gained or profited from such acts in order to establish financial misconduct.
 {¶ 7} "VI. Trial court's failure to find defendant-appellee had dissipated assets when evidence clear that defendant-appellee gifted twenty-five thousand dollars ($25,000.00) to third parties within sixty (60) days after bieng [sic] served with the complaint for divorce with injunctions constitutes an abuse of the trial court's discretion.
 {¶ 8} "VII. Trial court erred by not awarding plaintiff-appellant reasonable attorney fees."
 {¶ 9} Salma and Wassef Mikhail were married on February 17, 1964 in Cairo, Egypt. Two children were born issue of the marriage who were emancipated at the time of the proceedings below. During most of their married life, the Mikhails lived in Toledo, Ohio, where Wassef was a successful orthopedic surgeon and Salma managed the marital home and raised the couple's children. Wassef had also been very successful in investing in the stock market and had maintained several accounts with Merrill Lynch and Paine Webber which were invested entirely in equities. On March 23, 2001, the parties separated and shortly thereafter, Wassef transferred $4,000,000 in equities into Salma's account at Merrill Lynch. On July 13, 2001, Salma filed a complaint for divorce in which she sought an equitable division of marital property, permanent spousal support and attorney fees. The lower court then entered a standard injunction which enjoined the parties, in pertinent part, from selling or disposing of any and all property owned by either or both parties without the prior written consent of the spouse or the court. Excluded from that order was any account used by either party for the payment of living expenses. Thereafter, Wassef filed an answer and counterclaim for divorce, also seeking an equitable division of the parties' marital property.
 {¶ 10} Subsequently, Salma filed a motion to show cause in which she alleged that since the entry of the court-ordered injunction, Wassef had violated the injunction by withdrawing funds from the parties' accounts and transferring the sums of $18,775 to Father Neil Lucas and $1,000 to Elias Antypas. She also alleged that in the month of August 2001, Wassef incurred and paid for expenses in the amount of $42,737.21, which were clearly beyond living expenses. On April 5, 2002, the lower court filed a consent judgment entry which first stated that the parties had settled the matters involved in Salma's motion to show cause. The court then ordered Wassef to pay Salma temporary spousal support of $5,000 per month and $35,000 for past due spousal support and ordered Salma's motion to show cause to be dismissed with prejudice.
 {¶ 11} The case proceeded to a final hearing over several days in the fall of 2002. At the beginning of the hearing the parties notified the court that they had reached an agreement with regard to the division of the parties' personal property, household furnishings, art, jewelry, Persian rugs, and automobiles. The parties also reached agreements with regard to their real property. Specifically, they agreed to list and sell the two Palm Coast lots and divide the proceeds equally; to list the E36 Point Santo, Sanibel, Florida condominium for sale with a list price of $1,200,000, and to divide the proceeds equally; to equally divide the rental income earned from the Sanibel condominium while the sale was pending; and to list and sell the marital residence on Shamley Green in Toledo, with a list price of $250,000 and to divide the proceeds equally. In addition, the parties agreed to equally divide the after tax royalty income Wassef receives from existing patents and licensing agreements so long as there is income and to equally divide checks held by the parties' attorneys totaling $35,741.89. Finally, the parties agreed that Wassef would be awarded the parties' home at 536 Lighthouse Way in Sanibel, Florida, subject to Salma's equity interest. The parties then submitted the following issues to the court for determination: whether Wassef committed financial misconduct; the division of the parties' remaining marital assets and liabilities; whether Salma was entitled to an award of spousal support; and whether Salma was entitled to an award of attorney fees.
 {¶ 12} The evidence submitted at the hearing below predominantly went to the issue of whether Wassef committed financial misconduct. Salma alleged that Wassef had committed financial misconduct by failing to diversify the parties' portfolio, using a margin account to finance stock purchases, making monetary gifts to the parties' children, making a gift of stock to a friend's child, and making gifts to Wassef's former secretary. Salma also alleged that contrary to her wishes and to the advice of their stockbroker, Wassef continued to buy stocks on margin and maintained a portfolio that was invested entirely in stocks. Salma alleged that Wassef's failure to diversify their portfolio resulted in large losses. In particular, evidence submitted at the hearing below revealed that as of December 1999, the various accounts over which Wassef had exclusive control had a market value of approximately $44,000,000. As of March 30, 2001, however, the value of the portfolio had dropped to approximately $24,000,000. In addition to the parties, several witnesses testified below regarding the portfolio and Wassef's investment strategy. Those witnesses were Kevin Gilmore, the parties' accountant; Joe Majdalani, the parties' stockbroker since 1986; Harvey Rosen, an economist/financial analyst; and Richard Flasck, the parties' financial advisor for 20 years.
 {¶ 13} On April 3, 2003, the lower court issued a decision on the issues presented at the hearing. Initially, the court determined that the parties' agreement and stipulations regarding the division of personal and real property were fair and reasonable and adopted those as part of its decision. The court next determined that for purposes of valuing the marital property, the term "during the marriage" should be from the date of marriage through the date of the divorce hearing, September 2002.
 {¶ 14} The court then addressed the issue of Wassef's alleged financial misconduct and made the following findings:
 {¶ 15} "The parties separated in March of 2001; the Complaint for Divorce was filed in July of 2001. The several acts of the Defendant which the Plaintiff characterizes as financial misconduct all occurred, or began prior to those dates, at times when the parties were cohabitating as spouses; the Defendant's investment strategy of purchasing stocks had been ongoing for a period in excess of twenty (20) years; the Defendant had an established practice of buying stocks on margin since 1997; the children's accounts had been in place for many years; the gift of stock to the friend's son occurred in June of 1999; the gifts made to the Defendant's former secretary/office manager spanned a period of eleven (11) years ending in 2000; and the alleged unaccountable cash expenditures covered a period from 1994 through 2001.
 {¶ 16} "Accordingly, the undisputed evidence showed that the financial activities of the Defendant, which the Plaintiff claims to constitute financial misconduct occurred prior to the separation of the parties in 2001. Thus, the Plaintiff is not entitled to a presumption of wrongful scienter. The Court finds that the Plaintiff has failed to prove that the Defendant's conduct was intended to dissipate the Plaintiff's share of the marital estate. The Court further finds that the Defendant did not personally gain or profit from any of the alleged misconduct. The Court further finds that there was nothing evasive about the Defendant's financial dealings — each transaction was properly documented thereby avoiding any question or confusion.
 {¶ 17} "The Plaintiff characterizes Defendant's investment practice as `speculation.' Yet, the undisputed testimony showed that the Defendant invested in growth companies involved in technology — computers, semiconductors, telecommunications and biotechnology. The Defendant was not an investor acting upon a `tip' or dealing in `penny stocks.' He did his own research and made the stock purchases after consultation with his investment advisors. The stocks were purchased at a price that the Defendant determined would be at an appropriate level to make the acquisition. These practices could hardly be described as being speculative.
 {¶ 18} "The Plaintiff characterizes the Defendant's practice of buying stock `on margin' as being `reckless.' The undisputed evidence showed that after the severe market correction/crash following the events of September 11, 2001, the Defendant still remained on the positive side of the investment ledger in the amount of several million dollars. Indeed, both professional investment advisors testified that the Defendant made correct investment choices over the years.
 {¶ 19} "The Plaintiff places great emphasis on a meeting in December of 1999 between the parties and Richard Flasck, their investment advisor/broker at Merrill Lynch. At that meeting, Mr. Flasck recommended that the Defendant consider diversifying several portfolios to include income generating assets such as certificates of deposit and municipal bonds. At best, the Plaintiff may have encouraged the Defendant to follow Mr. Flasck's investment strategy. At no time did the Plaintiff ever insist that the Defendant diversify his stock portfolio. Indeed, in December of 1999, the Plaintiff held two (2) investment accounts in her own name. Although she had full authority over those accounts, she did not act upon Mr. Flasck's recommendation. It was not until October of 2001, following the separation of the parties, and after the Defendant had transferred Four Million Dollars ($4,000,000.00) in stocks into one of Plaintiff's accounts, that she diversified her portfolio."
 {¶ 20} The court then found that based upon the foregoing, Salma had failed to establish that Wassef had engaged in acts of financial misconduct and that the financial activities about which Salma complained could not be characterized as attempting to dissipate, destroy, conceal or fraudulently dispose of any marital assets within the meaning of R.C. 3105.171(E)(3).
 {¶ 21} The court then identified those assets which were marital and nonmarital property, awarded Salma marital assets of $3,653,945 and awarded Wassef marital assets of $16,458,740. The court then found that a distributive award to Salma of $6,402,848 was appropriate. In dividing the marital property as it did, the court stated that upon consideration of the factors listed in R.C. 3105.171(F), an equal distribution of the marital estate was equitable.
 {¶ 22} Next, the court addressed the issue of spousal support and, after reviewing the applicable R.C. 3105.18(C)(1) factors, awarded Salma monthly spousal support of $1,460 until Salma's death, re-marriage, cohabitation with another as if married but without the benefit of a ceremony, or other order of the court.
 {¶ 23} Finally, the court addressed the issue of attorney fees and determined that because Salma was not prevented from adequately pursuing and protecting her rights absent an award of attorney fees and because she had the financial ability to pay the fees given the division of marital assets, she was not entitled to an award of those fees. Appellant now challenges that judgment on appeal.
 {¶ 24} Because the first, second, third, fourth and fifth assignments of error are related, they will be addressed together. Each of these assignments of error challenges the trial court's holding that Wassef did not engage in financial misconduct and refusal to make a distributive award in light of that alleged financial misconduct.
 {¶ 25} The Supreme Court of Ohio has long recognized that a trial court is vested with broad discretion in fashioning its division of marital property. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. R.C. 3105.171(B) and (C)(1) provide that in a divorce proceeding, all marital property is to be divided equally unless an equal division would be inequitable. In determining whether an equal division of the marital assets would be inequitable, a court may consider whether one party has engaged in financial misconduct. To that end, R.C. 3105.171(E)(3) provides that if a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property. The burden of proving financial misconduct is on the complaining party. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, ¶ 43. When determining whether to make a distributive award, the court must consider all of the factors identified in R.C. 3105.171(F) and any other factors it deems relevant. Because R.C. 3105.171(E)(3) states that the court "may" compensate the offended spouse for the financial misconduct of the other spouse, the trial court's decision to make or not make a distributive award to compensate for financial misconduct is reviewed under an abuse of discretion standard. Huener v. Huener (1996),110 Ohio App.3d 322, 326. An abuse of discretion is shown by more than an error of law or judgment. A party must show that the court's decision reflects an unreasonable, arbitrary or unconscionable attitude.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} We will first address Salma's argument that the lower court applied the wrong legal standard in evaluating her claim of financial misconduct. Salma asserts that the court erred in requiring her to show intentional misconduct and/or that Wassef's conduct was intended to dissipate her share of the marital estate and increase his share in order to establish financial misconduct.
 {¶ 27} In finding that Wassef had not committed financial misconduct, the lower court relied on previous decisions from this court interpreting R.C. 3105.171(E)(3). In Jump v. Jump (Nov. 30, 2000), 6th Dist. No. L-00-1040, we interpreted the financial misconduct statute as follows:
 {¶ 28} "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. `Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' Id.
 {¶ 29} "The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., use of marital assets or funds during the pendency of or immediately prior to filing for divorce. SeeBabka v. Babka (1992), 83 Ohio App.3d 428 (account liquidated `just prior to the parties' divorce'); Gray v. Gray (Dec. 8, 1994), Cuyahoga App. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse);Spychalski v. Spychalski (1992), 80 Ohio App.3d 10 (dissipation of wrongful death settlement obtained while parties divorce complaint was pending). An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. Rinehart v.Rinehart (May 18, 1998), Gallia App. No. 96 CA 10, unreported."
 {¶ 30} In Jump, we affirmed the trial court's finding that the appellant had dissipated marital assets when, during the pendency of the divorce, he stopped making payments on the parties' equity loan and, instead, contributed to the rent and household expenses of his girlfriend. In Detlef v. Detlef (Dec. 14, 2001), 6th Dist. No. L-00-1137, we cited the Jump standard for financial misconduct with approval and affirmed the trial court's finding of financial misconduct in a case in which the appellant began withholding cash deposits from his business account and instead made large cash deposits to his personal account after his wife filed for divorce. Similarly, in Syslo v. Syslo,
6th Dist. No. L-01-1273, 2002-Ohio-5205, we affirmed the trial court's finding of financial misconduct where, after the parties separated, the appellant gave the parties' tax refund checks to his brother and sold the bulk of the parties' marital property, valued at approximately $75,000, at garage sales netting approximately $7,400.
 {¶ 31} Appellant now asks that we expand our definition of "financial misconduct" to include a spouse's risky investment strategy. She essentially asserts that because the value of the parties' investment portfolio declined from approximately $44,000,000 to approximately $24,000,000 from December 1999 to March 2001, and because Wassef refused to heed the advice of his investment advisors to move a portion of his portfolio into less risky investments, Wassef was guilty of financial misconduct as that term is used in R.C. 3105.171(E)(3) and she is entitled to a distributive award. More generally, appellant contends that spouses should be held accountable to each other under a prudent investor standard and that Wassef breached his fiduciary obligation to Salma under this standard.
 {¶ 32} We do not disagree with appellant's proposition that spouses have some fiduciary responsibility toward each other. Nevertheless, to hold spouses accountable to each other under a prudent investor standard is, in our view, simply unworkable in the context of a divorce proceeding. Although in the current case, Wassef made all of the investment decisions for the parties, how is such a standard to be applied when the parties work together on some level in determining how their money is to be invested? Should each party be held accountable to the other for stock picks which may have seemed wise at the time but which ultimately failed? As the court in Jacobs v. Jacobs, 4th App. No. 02CA2846, 2003-Ohio-3466, ¶ 23, stated: "* * * investing, even poor investing, is neither wrongdoing nor financial misconduct and we will not construe the statute so broadly as to include investment mistakes." We believe the better standard, and the one that can apply with more ease to investment issues, is the standard that we enunciated in Jump set forth above. That is, there must be some showing of wrongdoing or interference with the offended spouse's property rights before a showing of financial misconduct can be predicated on a party's investment strategy.
 {¶ 33} The Ohio cases cited by appellant in support of her proposition do not support a presumption of financial misconduct for risky investment strategies. Rather, in each of those cases, the offending spouse engaged in some form of wrongdoing. In Grime v. Grime (Nov. 22, 1996), 6th Dist. No. F-96-006, we affirmed the trial court's finding of financial misconduct where that finding was based on the appellant's "mistrust and irrational refusal to face up to obvious apparent realities" regarding the parties' motel. In addition, "her transparent refusal to heed the advice of her attorney led to a dissipation" of "close to $50,000 in losses" which were attributable to appellant's "reluctance to sell the motel, her activities regarding its operation, and questions surrounding her lack of accountability of funds collected during her residency at the motel." Regarding appellant's operation of the motel, evidence established that appellant failed to make mortgage and utility bill payments on the motel yet paid herself a salary.
 {¶ 34} In Newman v. Newman (Mar. 31, 1995), 6th Dist. No. L-93-354, the appellant ran up extensive credit card debt without a credible explanation for the expenditures, cashed in almost $20,000 in certificates of deposit, let back taxes accumulate on rental property and, in short, squandered over $80,000 in the final two years of the parties' marriage. In that case, the appellant's conduct clearly jeopardized the appellee's financial condition. In Donnelly v. Donnelly,
2d Dist. No. 2002-CA-53, 2003-Ohio-1377, the appellate court affirmed the trial court's finding of financial misconduct where there was clear and convincing evidence that the appellant transferred property without his wife's knowledge and concealed assets. Similarly, in Hoffman v. Hoffman
(Aug. 11, 1994), 10th Dist. No. 94APF01-48, the court affirmed a finding of financial misconduct where the appellant invested more than $44,000 in marital funds in his girlfriend's business and failed to obtain any written documentation to evidence his contribution or role in the business. Finally, appellant relies on the case of Linde v. Linde (Mar. 6, 1996), 1st Dist. No. C-940944, in support of her proposition. In that case, the appellant alleged that she should be compensated for appellee's alleged mismanagement of family finances during the marriage. The trial court then compensated appellant for the sums with which appellee speculated in the stock market by charging $12,615 against him from the sale of the marital residence. The appellate court affirmed that judgment. In that case, however, the facts as set forth by the appellate court do not allow us to determine the basis for the award. It is also not clear if the trial court actually found that the appellee had committed financial misconduct.
 {¶ 35} We therefore reject appellant's proposition and find the fourth and fifth assignments of error not well-taken.
 {¶ 36} Appellant's first, second and third assignments of error challenge the trial court's finding that Wassef did not engage in financial misconduct. Salma asserts that the court's finding was against the manifest weight of the evidence and an abuse of discretion because the evidence established that Wassef engaged in a reckless investment strategy, concealed that strategy from his wife, and continued the strategy after Salma asked him to stop and against the advice of their broker, all resulting in a significant dissipation of the marital estate.
 {¶ 37} Upon a review of the evidence presented at the trial below, we cannot conclude that the trial court abused its discretion in finding that Wassef did not engage in financial misconduct. Although Wassef was described by several witnesses as an aggressive investor in the stock market who took risks, the parties' investment advisors, Joe Majdalani and Richard Flasck, testified that Wassef was a very successful investor. Despite the market crash of 2000, Majdalani testified that between 1997 and September 2001, Wassef actually made approximately $1,000,000 in the stock market. Indeed, even Salma's expert witness, Dr. Harvey Rosen, an economist and financial analyst, testified that after reviewing the parties' investment accounts, Wassef was a risk taker who did very well.
 {¶ 38} Accordingly, we must conclude that the trial court's findings regarding the allegations of financial misconduct were supported by the record and that the court did not abuse its discretion in determining that Wassef did not commit financial misconduct in the manner in which he invested the parties' marital assets. The first, second and third assignments of error are not well-taken.
 {¶ 39} In her sixth assignment of error, appellant challenges the trial court's finding that Wassef did not engage in financial misconduct when he made gifts of approximately $25,000 to friends after the court had enjoined the parties from transferring any property out of the marital estate. This assignment of error addresses the issue of Wassef's payment of approximately $24,000 to Father Neil Lucas and $1,000 to Aelis Antypas shortly after being served with the injunction. Salma asserted below that these monetary transactions constituted dissipation of marital assets for which she was entitled to a distributive award. In contrast, Wassef asserted that these sums were paid as compensation for the recipients' providing him with housing while he stayed in the Toledo area during the pendency of the divorce.
 {¶ 40} In dealing with this issue, the trial court concluded that Salma had no claim against Wassef for the monies transferred because she had entered into a consent judgment entry, dated April 5, 2002, which dismissed with prejudice her motion to show cause against Wassef for these very same transfers. Moreover, as a result of the show cause motion, the court ordered Wassef to pay Salma $5,000 per month in spousal support and ordered him to transfer to Salma $35,000 for past spousal support. There had never previously been a temporary spousal support order entered by the court but, rather, in a magistrate's order of August 16, 2001, Salma was permitted to draw against the interest paid on a Merrill Lynch account for living expenses and other cash requirements. The court then ordered that she pay her own living expenses. As of the date of the show cause proceeding, there was no evidence that Wassef was under any obligation to pay support or that he was behind in any support. Accordingly, the order of April 5, 2002, which awarded her past spousal support of $35,000, did provide Salma with some compensation for Wassef's transfer of these funds. Accordingly, we cannot say that the lower court abused its discretion in failing to find that the transfers constituted financial misconduct and in failing to award Salma a distributive award. The sixth assignment of error is not well-taken.
 {¶ 41} Finally, in her seventh assignment of error, appellant asserts that the lower court erred in failing to award her reasonable attorney fees.
 {¶ 42} R.C. 3105.18(H) provides that a trial court may award reasonable attorney fees to either party during any stage of a divorce proceeding. In order to make such an award, the court must determine whether the payor has the ability to pay the attorney fees it awards and whether either party would be prevented from fully litigating his or her rights and adequately protecting his or her interests if attorney fees were not awarded. The trial court's decision regarding attorney fees must be equitable, fair, and serve the ends of justice. Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 642. An appellate court will only disturb a trial court's decision as to attorney fees if the trial court abused its discretion. Id.
 {¶ 43} At the hearing below, Salma testified that she believed her attorney's fees were reasonable and necessary but further admitted that she was not lacking in funds with which to prosecute her case. Indeed, Salma was awarded over $10,000,000 in marital assets. Accordingly, we cannot say that the trial court abused its discretion in refusing to award Salma attorney fees and the seventh assignment of error is not well-taken.
 {¶ 44} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Pursuant to App. R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Knepper, J., Pietrykowski, J., Singer, P.J., Concur.