OPINION *Page 2 
{¶ 1} Defendant-appellant William B. Shetler appeals the February 6, 2008 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, finding he engaged in financial misconduct, dividing the parties' assets and liabilities, and ordering he pay spousal support to Plaintiff-appellee Cindy M. Shetler.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The parties were married on August 17, 1982, and three children were born as issue of the marriage. All three children are now emancipated.
 {¶ 3} Appellant Husband is 59 years-old, and has practiced law for 25 years, primarily as a solo practitioner. On November 5, 2004, Husband suffered a heart attack, and as a result underwent triple bypass surgery in 2005. Appellant maintains his current health impairs his earning ability.
 {¶ 4} Appellee Wife is 51 years-old. She attended Stark Technical College for one year after graduating from high school. Subsequently, she worked as a legal secretary in Alliance Municipal Court for five years. One year after the birth of the parties' first child, Wife left her employment with the Municipal Court, and did not work outside the home. Wife later transferred her governmental PERS account to an IRA with Butler-Wick, which has a current value of $22,170.00. In 1999, Wife began working part-time for the Alliance YMCA. Wife also worked part-time at the Alliance Elks club as a lifeguard.
 {¶ 5} The parties enjoyed an affluent lifestyle during the marriage. Husband administered the majority of the parties' financial affairs. In November of 1998, the parties established a home equity line of credit on their home, with an initial draw of *Page 3 
$110,000 to pay off an existing mortgage on the home. In July of 2001, the balance on the home equity loan was $201,298.33. On April 15, 2002, the home equity balance was reduced to $187,565.72. However, in June of 2005, the balance was $203,034.53. At the time of trial, the balance was $202,906.21.
 {¶ 6} The evidence presented at trial demonstrates Husband made premature withdrawals from his IRA accounts in 2001. All of Husband's retirement accounts were depleted by 2004. Husband testified at trial the withdrawals from the retirement accounts and the home equity line were used to pay family expenses and loan obligations. Further, the evidence indicates the parties incurred outstanding tax liability amounting to $43,747.33 at the time of trial. Due to Husband's medical condition, the parties owe $11,000.00 in outstanding medical bills.
 {¶ 7} Via Judgment Entry of February 6, 2008, the trial court granted Wife's complaint for divorce on the grounds of incompatibility. The trial court found Husband engaged in financial misconduct, and divided the parties' assets and liabilities accordingly. The trial court ordered Husband pay Wife spousal support in the amount of $4000.00 per month for 120 months. The trial court further ordered Husband pay Wife's attorney fees in the amount of $15,431.00.
 {¶ 8} Appellant Husband now appeals, assigning as error:
 {¶ 9} "I. THE TRIAL COURT'S DECISION THAT HUSBAND COMMITTED FINANCIAL MISCONDUCT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE RECORD DEMONSTRATES THAT WIFE DID NOT PROVIDE ANY EVIDENCE THAT HUSBAND INTENDED TO WRONGFULLY DEPRIVE HER OF MARITAL ASSETS. *Page 4 
 {¶ 10} "II. WHEN THE RECORD CONTAINS EVIDENCE THAT WIFE DELIBERATELY SOLD MARITAL ASSETS FOR WELL BELOW MARKET VALUE AND REFUSED TO TURN IN A VEHICLE AT THE END OF ITS LEASE, THE TRIAL COURT'S FAILURE TO FIND THAT WIFE COMMITTED FINANCIAL MISCONDUCT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} "III. THE TRIAL COURT'S DETERMINATION THAT THE FIRST ENERGY STOCK AND WIFE'S ENTIRE IRA ARE HER SEPARATE PROPERTY, AND THAT HUSBAND'S PERSONAL PROPERTY IS MARITAL IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT DETERMINE THE VALUE OF THE MARITAL PORTION OF WIFE'S IRA BEFORE INCLUDING IT IN ANY PROPERTY DIVISION AWARD.
 {¶ 13} "V. BECAUSE THE TRIAL COURT'S TREATMENT OF THE DIVISION OF ASSETS AND DEBTS WAS BASED UPON ERRONEOUS FINDINGS OF FINANCIAL MISCONDUCT, A MISCHARACTERIZATION OF ASSETS, AND A LACK OF EVIDENCE AS TO THE VALUE OF MARITAL ASSETS, THE TRIAL COURT ABUSED ITS DISCRETION IN ITS OVERALL DIVISION OF THE ASSETS AND DEBTS.
 {¶ 14} "VI. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING $4,000, PER MONTH TO WIFE IN SPOUSAL SUPPORT.
 {¶ 15} "VII. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING WIFE ATTORNEY FEES." *Page 5 
 I. {¶ 16} In the first assignment of error, Husband asserts the trial court's finding he engaged in financial misconduct is against the manifest weight of the evidence.
 {¶ 17} R.C. 3105.171(E)(3) provides "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The burden of proving financial misconduct is on the complaining spouse.
 {¶ 18} The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. Boggs v.Boggs (March 26, 2008), Delaware Co. App. No. 07 CAF 02, 2008-Ohio-1411, citing Babka v. Babka (1992), 83 Ohio App.3d 428, 615 N.E.2d 247.
 {¶ 19} Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. Bucalo v.Bucalo 2005-Ohio-6319. The burden of proving financial misconduct is on the complaining party. Gallo v. Gallo, 2002-Ohio-2815.
 {¶ 20} In Mikhail v. Mikhail, 2005-Ohio-322, the Sixth District found financial misconduct must be based on "wrongdoing." In describing the wrongdoing, the court stated "[t]ypically, the offending spouse * * * either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets."
 {¶ 21} In Eggeman v. Eggeman, 2004-Ohio-6050, the Third Appellate District also found "[b]efore a compensating award is made * * * there must be a clear showing *Page 6 
that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets." The court found while the husband did engage in financial misconduct, the distributive award to the wife was not warranted because the record failed to show the husband personally gained or profited from his misconduct or that the wife's interest was defeated. Id.
 {¶ 22} The Seventh District Court of Appeals found a trial court is within its discretion to find financial misconduct occurred even "long before divorce proceedings were initiated" if the opposing party can establish the other party had wrongful intent when the conduct occurred.Orwick v. Orwick, 7th Dist. No. 04 JE 14, 2005-Ohio-5055, at ¶ 28. TheOrwick court went on to state "there are many forms of financial misconduct, and whether or not a party committed such misconduct is largely dependent on the specific facts of the case." Id. at ¶ 30.
 {¶ 23} The court further concluded:
 {¶ 24} "Although the proximity of the alleged misconduct to the initiation of divorce proceedings is not the only means to establish wrongful intent or scienter, it is by far the most common means. Furthermore, if the time frame of the alleged misconduct does not establish scienter, there must be some other evidence that does establish it. Appellee seems to assume that the financial misconduct may occur at any time during the marriage, and that no independent proof of scienter is necessary for the trial court to invoke R.C. § 3105.171(E)(3) other than that the misconduct occurred during the marriage. This is not a correct interpretation of R.C. § 3105.171(E)(3). If Appellee believes that financial misconduct occurred long before divorce proceedings *Page 7 
were initiated, Appellee also needed to prove that Appellant had a wrongful intent when the conduct occurred."
 {¶ 25} Based upon the above, Wife had the burden of demonstrating Husband engaged in financial misconduct. While Wife offered evidence Husband dissipated the parties' assets, Wife did not demonstrate Husband engaged in such acts with wrongful intent or scienter. Rather, Husband testified at trial he withdrew the funds in order to meet family obligations and to pay off loans incurred by the parties. The evidence demonstrates both parties enjoyed an affluent lifestyle throughout the marriage, while raising three children and paying for private education. While the trial court may not have believed Husband's testimony the assets were used for marital purposes, such does not satisfy Wife's burden to demonstrate they were not or to affirmatively demonstrate Husband profited from the alleged misconduct or intentionally defeated Wife's distribution of assets.
 {¶ 26} Accordingly, we find the trial court's conclusion Husband engaged in financial misconduct is not supported by the evidence.
 {¶ 27} The first assignment of error is sustained.
 II. {¶ 28} In the second assignment of error, Husband argues the trial court erred in failing to find Wife engaged in financial misconduct. Specifically, Husband asserts Wife sold two Persian rugs for well below market value and refused to turn in a leased vehicle at the expiration of the lease thereby incurring financial penalties.
 {¶ 29} With regard to the Persian rugs, Husband submits Wife sold a Diru Jasgab rug valued at $10,000.00 for $800.00, and a Ming Dynasty rug valued at $6,000.00 for *Page 8 
$500.00. Husband submits the parties' homeowner's insurance declaration page as evidence of the rugs' value.
 {¶ 30} The following exchange occurred at trial:
 {¶ 31} "Q. Cindy, I'd like you to pick up that Unitrin Kemper document that we were referred to there.
 {¶ 32} "A. Okay. Yes.
 {¶ 33} "Q. We were talking about Item No. 2. Starts with D-i-r-u — Diru?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. And had to do with the rug?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. And that was valued at $10,000 for insurance purposes, and that's the one you sold for $800?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. And who'd you sell it to?
 {¶ 40} "A. Somebody I don't know.
 {¶ 41} "Q. Well now, come on, Cindy. Who did you sell it [sic]? It wasn't more than a month or two ago.
 {¶ 42} "A. When did I sell it or?
 {¶ 43} "Q. Yeah. You said you sold it for $800 to get the $2,500 to pay Mr. Adlon?
 {¶ 44} "A. Yes. I took it over to see how much it would be worth and, over the Shaheen's, and it wasn't really worth a whole lot of money.
 {¶ 45} "Q. I know, but actually who you sold it to? *Page 9 
 {¶ 46} "A. I don't know. I sold it out of my car.
 {¶ 47} "Q. Out of your car?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. To who?
 {¶ 50} "A. To somebody that was willing to pay for it.
 {¶ 51} "Q. What did they look like?
 {¶ 52} "A. It was a man. I don't know. I sold it.
 {¶ 53} "Q. White man, black man?
 {¶ 54} "A. A white man.
 {¶ 55} "Q. How old?
 {¶ 56} "A. Oh, gosh. I don't know. In his fifties, sixties.
 {¶ 57} "Q. Where were you when you sold this to him out of your car?
 {¶ 58} "A. In Canton.
 {¶ 59} "Q. Where in Canton?
 {¶ 60} "A. In a parking lot.
 {¶ 61} "Q. In a parking lot?
 {¶ 62} "A. By the Belden Village. Somewhere around the Belden Village.
 {¶ 63} "Q. Now how did you come in contact with somebody to buy a rug out of your car in a parking lot in Belden Village?
 {¶ 64} "A. I took it over because I was desperate for money, I took it over to see if I could get any money for it from Shaheen's and they wouldn't give me any money for it.
 {¶ 65} "Q. And you just happened to cross some man in a parking lot?
 {¶ 66} "A. Yes. *Page 10 
 {¶ 67} "Q. Who said "I'll buy it."?
 {¶ 68} "A. Yep. Yes; I did. I was desperate.
 {¶ 69} "Q. Do you expect the Court to believe this, Cindy?
 {¶ 70} "A. That's what happened. I was in desperate need of money. I have no money.
 {¶ 71} "Q. So you sold a $10,000 rug for $800?
 {¶ 72} "A. Yes — well, it's not worth $10,000. That's the insured appraisal. That's the insurance company's.
 {¶ 73} "Q. Did he give you cash or a check?
 {¶ 74} "A. Gave me cash.
 {¶ 75} "Q. And this was during the period of time that the restraining order was in effect about not disposing of any assets of the parties, correct?
 {¶ 76} "A. No.
 {¶ 77} "Q. Was it after you filed the divorce?
 {¶ 78} "A. It was, let's see, Bill was arrested on Monday. The next day I saw my attorney which he said he needed money in order to represent me, and I have no money, so the following day I sold the rugs.
 {¶ 79} "Q. So you were contemplating filing a divorce when you sold this rug?
 {¶ 80} "A. Yes. I did go over and seek counsel.
 {¶ 81} "Q. And you did not disclose on your financial asset that you had sold this $10,000 item?
 {¶ 82} "A. Pardon me? *Page 11 
 {¶ 83} "Q. You didn't disclose on your financial statement at any time that you did that; that you sold this rug for $800 to some unknown man in a parking lot at Belden Village?
 {¶ 84} "A. I didn't think I needed to disclose that.
 {¶ 85} "Q. Now the next item is a Ming Dynasty wool rug, $6,000. Did you sell that?
 {¶ 86} "A. Yes.
 {¶ 87} "Q. How much did you sell that one for?
 {¶ 88} "A. $500.
 {¶ 89} "Q. Who did you sell that to?
 {¶ 90} "A. To the same man.
 {¶ 91} "Q. The same man?
 {¶ 92} "A. Yes.
 {¶ 93} "Q. Amazing.
 {¶ 94} "A. Yes.
 {¶ 95} "MR. ADLON: Objection. Ask that be stricken.
 {¶ 96} "THE COURT: Sustained.
 {¶ 97} "Q. So you meet this man in a parking lot at Belden Village and he happens to want to buy two rugs that you happen to have in the car and he happens to have $1,300 in cash?
 {¶ 98} "A. Yes. Yes.
 {¶ 99} "Q. And you can't describe him any better than a white male at fifty years of age? *Page 12 
 {¶ 100} "A. I was in desperate need of cash.
 {¶ 101} "* * *
 {¶ 102} "Q. Now Cindy, do you understand you're under oath here today?
 {¶ 103} "A. I am. Yes.
 {¶ 104} "Q. You're actually telling us you sold these rugs to some unknown strange man in a parking lot at Belden Village?
 {¶ 105} "A. Correct. Those rugs
 {¶ 106} "Q. For $1,300 in cash?
 {¶ 107} "A. That's what I needed.
 {¶ 108} "Q. That's your sworn testimony under oath here today to this Judge?
 {¶ 109} "A. Yes."
 {¶ 110} Tr. at 93-98.
 {¶ 111} As set forth in our analysis of the first assignment of error, dissipation of an asset alone does not amount to financial misconduct. Husband has not demonstrated Wife's scienter or wrongful intent in selling the rugs. While Wife may have exercised poor judgment in the transaction, the same does not necessarily satisfy Husband's burden of proving scienter in selling the rugs at issue. It was within the trial court's province to determine whether Wife's testimony concerning the sale of the rugs and the value of the rugs was credible. We will not second guess the trial court's determination on this issue.
 {¶ 112} Husband also alleges Wife engaged in financial misconduct by failing to timely return a leased vehicle in order to avoid financial penalties. Such does not, in and of itself, prove Wife's wrongful intent. Wife was entitled to use of a vehicle. We find *Page 13 
no error in the trial court's decision finding no financial misconduct was committed by Wife with respect to the leased vehicle.
 {¶ 113} The second assignment of error is overruled.
 III. {¶ 114} In the third assignment of error, Husband maintains the trial court erred in finding the First Energy Stock and Wife's IRA account to be her separate property.
 {¶ 115} Ohio Revised Code 3105.171(A)(6) defines "separate property":
 {¶ 116} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 117} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 {¶ 118} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 119} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
 {¶ 120} "(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
 {¶ 121} "(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
 {¶ 122} "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets; *Page 14 
 {¶ 123} "(vii) Any gift of any real or personal property or of aninterest in real or personal property that is made after the date of themarriage and that is proven by clear and convincing evidence to havebeen given to only one spouse.
 {¶ 124} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." (Emphasis added.)
 {¶ 125} We generally review the overall appropriateness of a trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. However, with the enactment of R.C. 3105.171, the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. Chase-Carey v. Carey (Aug. 26, 1999), Coshocton App. No. 99CA1; see, also, McCoy v. McCoy (1995),105 Ohio App.3d 651, 654, 664 N.E.2d 1012; Kelly v. Kelly (1996),111 Ohio App.3d 641, 676 N.E.2d 1210. Thus, the initial determination by a trial court that an asset is separate or marital property is a factual finding that will not be reversed unless it against the manifest weight of the evidence. Okos v. Okos (2000), 137 Ohio App.3d 563,739 N.E.2d 368, citing Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 126} Husband asserts the trial court erred in finding the First Energy stock was Wife's separate property. At trial, Husband testified: *Page 15 
 {¶ 127} "A. Oh, you talking about Ohio Edison?
 {¶ 128} "Q. First Energy?
 {¶ 129} "A.Yeah. I don't consider that right. Perhaps mistakenly considered that as an investment because I had that stock when I married Cindy. I gave her half of it, and we don't do anything with that stock, we just let it accumulate additional shares.
 {¶ 130} "Q. And do you have the same amount of shares as Cindy has?
 {¶ 131} "A. Yes. I split the original account in half.
 {¶ 132} "Q. Okay. So if Cindy has 48. something shares of First Energy?
 {¶ 133} "A. I would have the same."
 {¶ 134} Tr. at 42.
 {¶ 135} Subsequently, Wife testified:
 {¶ 136} "Q. Okay. Turn to the next exhibit, Exhibit 33, please. This is the statement on the 48 shares of First Energy stock that's in your name?
 {¶ 137} "A. Yes.
 {¶ 138} "Q. And that was owned by you prior to the marriage?
 {¶ 139} "A. Correct.
 {¶ 140} "Q. And your husband has testified that he gifted that to you. Do you know where you received this stock from?
 {¶ 141} "A. I can't answer that. That might have been, that could have been money I had in my savings account.
 {¶ 142} "Q. But are you certain that you actually owned the account prior to marriage?
 {¶ 143} "A. Yes." *Page 16 
 {¶ 144} Tr. at 60-61.
 {¶ 145} Assuming arguendo Husband is correct in that he gifted the First Energy Stock to Wife after the marriage, the property would remain Wife's separate property as determined by the trial court. As set forth above, Ohio Revised Code Section 3105.171(A)(6) clearly states a gift made after the date of the marriage to one spouse remains that spouse's separate property. Husband testified at trial he gifted one-half of his First Energy stock to Wife after the date of the marriage. Therefore, the trial court properly determined the stock is Wife's separate property.
 {¶ 146} Second, Husband argues the trial court erred in determining Wife's IRA account is entirely her separate property. Specifically, Husband asserts Wife worked for the Alliance Municipal Court for six years, about eight months to one year of which occurred during the marriage. As a result, Husband maintains a portion of the IRA account is marital property.
 {¶ 147} Evidence at trial demonstrates the IRA account has a value of approximately $22,000.00. However, neither party introduced valuation testimony as to the alleged marital portion of the account. Assuming arguendo, a portion of the account is marital property and the trial court erred in failing to make a finding relative thereto, Husband has waived the error by failing to introduce valuation testimony demonstrating prejudice as a result of the alleged error. Medley v.Medley (August 31, 1998), Licking App. No. 98 CA 8.
 {¶ 148} Husband cites the Fourth District Court of Appeal's decision in Basham v. Basham, 2007-Ohio-3941: *Page 17 
 {¶ 149} "We also recognize that the parties in the case placed the trial court in a difficult position because neither side produced evidence concerning the company's value. In light of that fact, it is tempting to simply apply a waiver theory and let the parties live with the consequences. Some case authority does indeed support that course of action. See Medley v. Medley (Aug. 31, 1998), Licking App. No. 98CA8;Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02 (Harsha, J., Dissenting). This court, however, has rejected a "waiver" approach when parties fail to adduce evidence of the value of marital assets. SeeCarl v. Carl (Jul. 22, 1999), Ross App. No. 98CA2442; Wylie v.Wylie (Jun. 4, 1996), Lawrence App. No. 95CA18; Wright, supra. We believe that when parties fail to adduce evidence or stipulate to the value of important and substantial marital assets, trial courts should require the parties to do so. See Willis v. Willis (1984),19 Ohio App.3d 45, 48, 482 N.E.2d 1274; Zona v. Zona, Medina App. No. 05CA0007-M, at ¶ 6; Wenger v. Wenger, Medina App. No. 02CA0065, at ¶ 18; Carl, supra. This view is similar to the idea that when fashioning an equitable marital property division, courts should require parties to produce evidence concerning a pension benefit's value, even if the parties themselves failed to do so. See, generally, Bisker v.Bisker 91994), 69 Ohio St.3d 608 N.E.2d 308."
 {¶ 150} Upon review of the Fourth District's decision, even if we do not apply a waiver theory, we do not find the alleged marital portion of Wife's IRA account an important and substantial marital asset. Rather, the entire account has a value of approximately $22,000.00, and Husband asserts the marital portion of said asset is approximately 1/6 of the account's value. We find this does not constitute a substantial asset in the circumstances of this case. *Page 18 
 {¶ 151} Husband next maintains the trial court erred in failing to make a determination as to Husband's separate property, where Wife did not dispute numerous items claimed by Husband to be his separate property.
 {¶ 152} Husband submitted to the trial court an exhibit outlining his separate and premarital property. Wife disputed some of the items listed, but did not dispute the remaining items were Husband's separate property. However, in the final divorce decree, the trial court did not address those items Wife did not dispute as Husband's separate property. Rather, the trial court ordered each party maintain the personal property, furniture and household goods currently in their possession. As a result, Wife retained all of the personal property, furniture and household goods remaining in the marital residence, which included those items Husband listed as his separate property. Further, Husband argues the trial court erred in determining the brass bed and Jerry Zelinsky painting were Wife's separate property, when Wife did not offer any evidence with regard thereto.
 {¶ 153} Upon review, we find the trial court's characterization of all the above mentioned personal property not supported by sufficient, credible evidence. Wife had the burden of proving the painting and brass bed were her separate property, which she failed to do. The trial court failed to make a specific finding explaining why the undisputed items Husband claimed were his separate property were distributed to Wife based solely on possession.
 {¶ 154} The third assignment of error is overruled, in part, and sustained, in part. *Page 19 
 IV. {¶ 155} In the fourth assignment of error, Husband again maintains the trial court erred in failing to value the marital portion of Wife's IRA account.
 {¶ 156} For the reasons set forth in our analysis and disposition of Husband's third assignment of error, we overrule the fourth assignment of error.
 V. {¶ 157} In the fifth assignment of error, Husband argues the trial court's division of assets and liabilities was based on the court's erroneous finding Husband engaged in financial misconduct, a mischaracterization of assets and a lack of evidence as to the value of marital assets; therefore, the trial court abused its discretion in the division of assets and liabilities.
 {¶ 158} Pursuant to our analysis and disposition of Husband's first and third assignments of error, we sustain the fifth assignment of error and remand the matter to the trial court to redivide the parties assets in accordance with our opinion
 VI. {¶ 159} In the sixth assignment of error, Husband asserts the trial court erred in awarding Wife $4,000.00 per month in spousal support.
 {¶ 160} Ohio Revised Code Section 3105.18 provides:
 {¶ 161} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. * * * *Page 20 
 {¶ 162} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 163} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 164} "* * *
 {¶ 165} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;"
 {¶ 166} Whereas this Court has reversed the trial court's finding Husband engaged in financial misconduct and remanded the case for a redivision of the parties' marital and separate assets and liabilities, the award of spousal support must also be vacated and remanded for reconsideration in accordance with the statutory law set forth above.Raff v. Raff (June 29, 2005) Stark App. No. 2004CA00251, 2005-Ohio-3348;Hurte v. Hurte, 2005-Ohio-5967.
 {¶ 167} The sixth assignment of error is sustained.
 VII. {¶ 168} In the seventh assignment of error, Husband maintains the trial court abused its discretion in awarding Wife attorney fees.
 {¶ 169} R.C. 3105.73(A) governs the award of attorney fees and litigation expenses in domestic relations cases and provides: "In an action for divorce* * * or an appeal of that action, a court may award all or part of reasonable attorney's fees and *Page 21 
litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of parties, and any other relevant factors the court deems appropriate."
 {¶ 170} R.C. 3105.73(A) does not specifically require the trial court to consider the parties' abilities to pay attorney fees. The trial court does not abuse its discretion every time it fails to consider the parties' abilities to pay. The statute allows the trial court to look at any relevant factor.
 {¶ 171} The awarding of attorney fees is within the sound discretion of the trial court. Swanson v. Swanson (1976), 48 Ohio App.2d 85,355 N.E.2d 894. The court may decide on a case by case basis whether an award of attorney's fees is equitable. Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785, 2006-Ohio-5741, at paragraph 70. When the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion. Id.; see, also, Richardson v. Richardson (Dec. 28, 1988), Medina App. No. 1726, unreported, at 5. Upon appeal, the question for inquiry is whether the trial court abused its discretion. Rand v.Rand (1985), 18 Ohio St.3d 366, 369, 481 N.E.2d 613.
 {¶ 172} Upon review of the record and the law set forth above, we find the trial court did not abuse its discretion in awarding Wife attorney fees.
 {¶ 173} The seventh assignment of error is overruled. *Page 22 
 {¶ 174} Based upon the above, the February 6, 2008 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division is reversed, in' part, and the case remanded for further proceedings in accordance with the law and this opinion.
Hoffman, P.J. Delaney, J. and Boggins V.J., concur *Page 23 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is reversed, in part, affirmed, in part, and the case remanded for further proceedings in accordance with the law and our opinion. Costs to be divided equally. *Page 1