[Cite as *Sayegh v. Khoury*, 2017-Ohio-2889.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MICHAEL SAYEGH | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee/Cross-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| SAMAR KHOURY | : | Case No. CT2017-0010 |
| | : | CT2015-0063 |
| | : | CT2015-0045 |
| Defendant - Appellant/Cross-Appellee | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court of Common Pleas, Domestic Relations Divison, Case No. DB2014-0405

JUDGMENT:      Affirmed in part, Reversed and Remanded in part

DATE OF JUDGMENT:      May 17, 2017

APPEARANCES:

For Plaintiff-Appellee/Cross-Appellant

JEANETTE MOLL
301 Main Street, Suite H
Zanesville, Ohio 43701

For Defendant-Appellant/Cross-Appellee

DAVID F. AXELROD
ADAM M. GALAT
Shumaker, Loop & Kendrick, LLP
41 S. High Street, Suite 2400

Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Appellant Samar Khoury appeals a divorce decree of the Muskingum County Common Pleas Court, Domestic Relations Division terminating her marriage to appellee Michael Sayegh and dividing marital property (CT2015-0045). She also appeals a judgment granting appellee's motion for Civ. R. 60(B) relief (CT2015-0063). [1]

STATEMENT OF THE FACTS AND CASE

**{¶2}** The parties in the instant case were married on April 2, 2005. Appellant is a physician specializing in cardiology. Appellee is a physician specializing in anesthesiology and pain management. No children were born as issue of the marriage.

**{¶3}** Appellee filed the instant complaint for divorce on May 8, 2014. Appellant answered and counterclaimed. The case proceeded to a three-day trial commencing April 1, 2015. The issues centered nearly entirely around the division of the assets of the marriage, as the parties owned commercial and residential real estate both in Muskingum County and in Syria.

**{¶4}** On June 1, 2015, the parties both filed extensive proposed findings of fact and conclusions of law. On August 17, 2015, the court entered judgment stating that it would adopt appellee's proposed findings of fact and conclusions of law with certain changes set forth in the judgment. The court ordered appellee to prepare a judgment of divorce accordingly. The court entered judgment in accordance with the entry prepared by appellee on August 19, 2015. Appellant filed a notice of appeal from this entry.

---

[1] On January 13, 2016, this Court granted appellant's motion to consolidate the appeals, with Case No. CT2015-0063 controlling.

{¶5}  On the second day of trial, a car crashed into the side of a commercial building owned by the parties on Maple Avenue in Zanesville.  The parties had stipulated that the value of the building was $990,000.00.  The damage was acknowledged on the record, and the parties stipulated that insurance proceeds would follow the building and be assigned in the same manner in which the property was distributed.

{¶6}  While completing repairs from the accident, Ronald Lafferty, the general contractor, discovered additional moisture damage relating to improper construction.  He prepared an estimate to address these damages of $45,415.00.

{¶7}  Work began to address the additional damages on September 11, 2015.  Portions of the outside walls known as drivit were removed, revealing substantial structural compromise to the supporting roof beams caused by water leaking over a period of time.  A structural engineer who assessed the integrity of the building estimated the repair cost to be $205,364.00.

{¶8}  Appellee moved for relief from judgment pursuant to Civ. R. 60(B)(2).  Appellee amended his motion to seek relief pursuant to Civ. R. 60(B)(1) and (5).

{¶9}  The court set the matter for an evidentiary hearing.  At the hearing, Ron Lafferty testified that the discovery of these damages could only be made upon the removal of the exterior drivit, which would not typically be done during a real estate appraisal or inspection due to the expense of removing and replacing the drivit, and matching it to the color of the adjacent exterior areas.

{¶10} The trial court granted the motion, finding that the parties were mutually mistaken as to the condition of the building, and the evidence concerning the structural damage to the building was not available to either of them prior to trial, as it was not

discoverable through an ordinary inspection or appraisal process.   Appellant filed a notice of appeal from this entry.

{¶11}  Appellant assigns five errors on appeal to this Court:

{¶12}  "I.    THE TRIAL COURT ERRED BY DENYING APPELLANT THE PROTECTIONS AFFORDED BY LOCAL RULE 9 OF THE DOMESTIC RELATIONS RULES OF PRACTICE AND PROCEDURE FOR MUSKINGUM COUNTY COURT OF COMMON PLEAS.

{¶13}  "II.    THE TRIAL COURT ERRED BY ADOPTING APPELLEE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, WHICH WERE FACTUALLY AND LEGALLY INACCURATE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14}  "III.    THE TRIAL COURT ERRED BY CONCLUDING THAT THE REAL ESTATE REFERRED TO AS 'DAMASCUS' WAS THE APPELLEE'S SEPARATE PROPERTY BASED ON A 'GIFT/INHERITANCE.'

{¶15}  "IV.  THE TRIAL COURT ERRED BY CONCLUDING THAT REAL ESTATE REFERRED TO AS 'SAFITA 1' WAS MARITAL PROPERTY.

{¶16}  "V.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING RELIEF UNDER OHIO CIV. R. 60(B)."

{¶17}  After oral argument, we sua sponte stayed the appeal and remanded to the trial court for the limited purpose of finishing its disposition of the Civ. R. 60(B) motion, as the trial court had not allocated financial responsibility for the structural  damage prior to the filing of the notice of appeal from the entry granting the motion.   Judgment Entry, 9/26/16.   The trial court initially set the matter for an evidentiary hearing on the issue of

damages.  However, on January 17, 2017, the court dismissed the Civ. R. 60(B) motion based on the Ohio Supreme Court's decision in *Morris v. Morris,* 148 Ohio St. 3d 138, 2016-Ohio-5502, 69 N.E.3d 664.

**{¶18}** Appellee filed a notice of appeal from the judgment (CT2017-0010[2]) and assigns the following errors on cross-appeal:

**{¶19}** "I.   THE TRIAL COURT ERRED IN RULING ON DR. KHOURY'S MOTION TO DISMISS AS IT LACKED JURISDICTION SUCH THAT THE TRIAL COURT'S ENTRIES OF JANUARY 17, 2017 AND FEBRUARY 1, 2017 ARE VOID *AB INITIO.*

**{¶20}** "II.   THE TRIAL COURT ERRED BY MISAPPLYING *MORRIS* AS WELL AS SEEKING TO RETROACTIVELY APPLY SUCH HOLDING.

**{¶21}** "III.   THE TRIAL COURT CORRECTLY GRANTED 60(B) RELIEF IN ITS ENTRY OF NOVEMBER 23, 2015.

**{¶22}** "IV.    AS THE TRIAL COURT DID NOT LACK SUBJECT MATTER JURISDICTION WHEN IT GRANTED DR. SAYEGH'S CIV. R. 60(B) MOTION, THE ENTRY OF NOVEMBER 23, 2015 IS NOT VOID *AB INITIO."*

**{¶23}** Appellant has added one supplemental assignment of error based on the court's judgment on remand:

**{¶24}** "VI.   THE TRIAL COURT ERRED BY FAILING TO VACATE AS VOID *AB INITIO* THE NOVEMBER 23, 2015 JUDGMENT BASED ON ITS LACK OF SUBJECT MATTER JURISDICTION."

---

[2] On February 23, 2017, we consolidated CT2017-0010 with CT2015-0063 and CT2015-0045, with the case number CT2017-0010 controlling.

I.

**{¶25}** In her first assignment of error, appellant argues that the trial court failed to comply with Local R. 9 of the Muskingum County Domestic Relations Court, which provides:

> Unless otherwise ordered by the Court, the Court shall prepare and file the proper Entry and cause a filed stamped copy thereof to be sent to all counsel of record and or parties unrepresented by counsel.  Except as to matters in which the Court prepares a proper Entry, counsel for the party in whose favor an order, decree or judgment is rendered, shall within five (5) days thereafter prepare the proper entry, and submit it to counsel for the adverse party who shall approve or reject the same within five (5) days after the receipt thereof.  If approval or rejection of an entry is not communicated to counsel for the prevailing party within the five (5) day period or if counsel for the prevailing party does not prepare an entry within the five (5) day period, counsel for the other party may forthwith present an entry to the trial Court for approval.  When the entry is approved by counsel, it shall be so endorsed and presented to the Judge to whom the case is assigned for approval and if signed by him shall be forthwith filed with the Clerk.  If counsel are unable to agree upon an entry, the trial Judge shall prepare and enter a proper entry.

**{¶26}** On June 1, 2015, both parties filed extensive proposed findings of fact and conclusions of law.  By entry of August 17, 2015, the trial court informed the parties that

it intended to accept appellee's findings with certain enumerated exceptions.  The trial court instructed appellee to prepare the divorce decree.  The decree was submitted to the court by appellee on August 19, 2015, and filed by the trial court on August 21, 2015.  Therefore, appellant argues that she was not given the requisite five days to respond to the entry.

**{¶27}** Appellee argues that this rule, which was effective October 14, 1977, was superseded by the Local Rules for the Muskingum County Common Pleas Courts which became effective February 1, 2014.  Appellant maintains that as a specific rule of the Domestic Relations Court, the above-quoted rule applied regardless of the intervening adoption of rules for the Common Pleas Court.

**{¶28}** Assuming arguendo that Loc. R. 9 as quoted above applied to the instant action, appellant has not demonstrated prejudice from the court's failure to allow her five days to respond to the entry prepared by appellee.   Appellant filed a thirty-eight page document setting forth her proposed findings of fact and conclusions of law on June 1, 2015.  Appellant thus was afforded ample opportunity to present her arguments to the court concerning the disputed issues in the case, and the court was aware of her position.

**{¶29}** From the text of the rule, it appears that the purpose of the five day period is to allow the parties to reach an agreement upon an entry reflecting the court's ruling in the case, which was an exercise in futility in the instant case given the sharp disagreement between the parties concerning the division of marital assets.  Appellant states at page six of her brief, "Dr. Khoury knew from Dr. Sayegh's proposed findings what to expect, and fully intended to detail the gross inaccuracies and object to the proposed decree."  However, the trial court was fully aware of appellant's position on the issues in the case

from her extensive proposed findings of fact and conclusions of law. Appellant has not demonstrated any prejudice from the court's failure to give her an opportunity to merely restate her position set forth at trial and in her proposed findings of fact and conclusions of law which were before the court.

{¶30} The first assignment of error is overruled.

II.

{¶31} In her second assignment of error, appellant argues that the trial court failed to scrutinize appellee's proposed findings of fact and conclusions of law, and adopted them without regard to their accuracy. Appellant then cites to numerous findings of the court that she argues are against the manifest weight of the evidence.

{¶32} Appellant's argument that the trial court merely signed off on appellee's proposed findings of fact without regard to the evidence presented at trial is wholly without merit. Both parties filed proposed findings on June 1, 2015. On August 17, 2015, the trial court issued a judgment concerning these findings which stated in pertinent part:

> Subsequent to the conclusion of the final hearing the Court required both parties to submit proposed Findings of Fact and Conclusions of Law. After reviewing the submissions of both parties, and further upon the evidence presented, the Court hereby adopts the Findings of Fact and Conclusions of Law of Plaintiff except to the extent modified herein.

{¶33} The court then set forth its modifications to appellee's findings of fact and conclusions of law, and ordered counsel for appellee to prepare a divorce decree accordingly. The record does not support appellant's claim that the trial judge failed to properly review the findings of fact before adopting them.

**{¶34}** We next turn to the findings of the court which appellant claims are against the manifest weight of the evidence. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St. 2d 279, 376 N.E.2d 578 (1978). As the trier of fact, the judge is in the best position to view the witnesses and their demeanor in making a determination of the credibility of the testimony. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.,* 53 Ohio St.3d 147, 154, 559 N.E.2d 1335 (1990).

**{¶35} Improper consideration of bonuses received after the stipulated valuation date**: Appellant argues that the court erred in finding two bonuses she received, totaling $65,000.00, to be marital property. She argues that the bonuses were not received until March of 2015, after the December 31, 2014, stipulated date the parties agreed to as the cutoff for debt and asset division.

**{¶36}** Appellant testified that she began her current employment in February of 2014. In March of 2015, she received a retention bonus of $25,000.00 and a balance scorecard bonus of $40,000.00, both of which were payable at the end of her first year of employment with Genesis. The trial court erred in finding that the entirety of these bonuses were marital property. Only the portion of these bonuses earned as of December 31, 2014, are marital according to the stipulated cutoff date for debt and asset division. While appellant now argues that none of this money is marital because her entitlement to these bonuses depended on the hospital's evaluation of her performance and on her

remaining with the practice until February of 2015, the trial court did not make a finding of fact concerning what portion of the bonuses, if any, was earned during 2014, and we decline to make such a finding on the state of the record before us. This issue is therefore remanded to the trial court to make a determination as to what portion of the retention and scorecard bonuses were earned prior to December 31, 2014.

{¶37} **Improper treatment of Safita 2 and its furnishings:** Appellant argues that the court erred in treating Safita 2, a home owned by appellant's brother, to be marital property. She argues that there was no competent evidence of the value of the home, and neither party owned any interest in the home.

{¶38} In conclusion of law number nine, the court states that Safita 2 would be addressed in relation to wire transfers of the parties. The trial court did not consider the home itself to be a marital asset, but rather considered the amount of money transferred by appellant to allow her brother to purchase this home in formulating an equitable distribution of property. Therefore, appellant is incorrect in her assertion that the court found Safita 2, which is owned by her brother, to be a marital asset.

{¶39} **Creation of an imaginary asset:** Appellant argues that the court created assets when it considered the large sums of money both parties transferred to Syria during the marriage as "assets" in the marital balance sheet.

{¶40} The pre-trial statement filed by appellant included appellee's gambling losses, incurred during the marriage, as marital property allocated to appellee. The parties thereafter included wire transfers each made to Syria, money expended for the care of appellant's father, health insurance paid by appellant on behalf of appellee, and

other expenditures incurred separately during the course of the marriage as "assets" for the purpose of the division of property.

**{¶41}** R.C. 3105.171(C)(1) provides:

Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

**{¶42}** R.C. 3105.171(F) allows the court to consider "any other factor that the court expressly finds to be relevant and equitable" when making an equitable division of property.

**{¶43}** A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property, *Berish v. Berish* , 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶44}** Both parties sought to include as marital property expenditures incurred during the marriage by the other party, including wire transfers to Syria. In conclusion of law 31, the trial court found as follows concerning the wire transfers of the parties:

The Court concludes that the parties each transferred large sums of funds during the marriage to Syria. The Court concludes that Safita 1 was

paid for by transfers of the Defendant/Wife of $274,000.00 ($172,000.00 from the Defendant/Wife and $102,000.00 given to her by the Plaintiff/Husband in 2011) plus transfers of the Defendant/Husband [sic] of $70,000.00. The Defendant/Wife paid immigration attorney fees of $3,000.00. Based on the foregoing, the Defendant/Wife's transfers reflect an additional sum of $294,000.00 which she acknowledged was used to purchase Safita 2. The Court concludes that the Plaintiff/Husband's testimony that these sums paid for Safita 2 and its furnishings are credible and worthy of belief particularly in light of the financial misconduct of the Defendant/Wife in seeking to conceal assets. The Court concludes that Plaintiff/Husband transferred $56,156.00 for the use of his family.

{¶45} The trial court did not abuse its discretion in considering the large sums of money expended by both parties to support their families in making an equitable division of property.

{¶46} **Improper treatment of expenditures to care for appellant's father:** Appellant argues that the court erred in considering funds expended for the care of her father in the division of marital assets, and also erred in its calculation of the amount of such expenditures.

{¶47} As discussed in the subsection immediately preceding this one, the trial court did not abuse its discretion in considering the money spent by the parties to support their families in fashioning an equitable division of property.

{¶48} Appellant provided information for expenses for the months of June, July, August, September, November and December of 2014, and also for January and

February of 2015.  From these records covering eight months, the court extrapolated a figure of approximately $3,000.00 per month.

**{¶49}** Appellant first argues that the court erred in including expenditures made after December 31, 2014.  The court used records of expenses in January and February of 2015 to estimate the monthly cost for caring for appellant's father, but did not consider such expenses in dividing property.  Appellant testified that her father came to their home in December, 2012.  Tr. 453.  The court considered two years of expenses in dividing the property, and therefore did not consider expenditures past December of 2014.

**{¶50}** Appellant argues that the court erred in its calculation, as the court divided the total expenditures by eight months instead of nine months.  The failure of appellant to provide documentation of expenses for 2014 was not supported by evidence that there were no expenses during that month.  The court took an average of the monthly expenses for the eight months in which records of expenses were provided, and used that average to estimate the total amount expended over a two-year period from December of 2012 to December of 2014.  The court did not err in its calculation.

**{¶51}** Appellant also argues that the court should have excluded several months of expenses during times in which she testified that her father was staying elsewhere and/or she spent little to no money to care for him.  However, the determination of the credibility of appellant's testimony was within the province of the trial court, and supporting documentation was not provided to the court concerning expenses during these periods of time.

**{¶52} Financial misconduct of appellee:**  Appellant argues that the court erred in failing to find financial misconduct on the part of appellee for money lost in gambling.

{¶53} R.C. 3105.171(E)(4) provides that if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse.   The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02, 2008-Ohio-1411, citing *Babka v. Babka*, 83 Ohio App.3d 428, 615 N.E.2d 247 (1992).  The burden of proving financial misconduct is on the complaining party. *Gallo v. Gallo,* 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815. Financial misconduct must be based on wrongdoing; typically, the offending spouse either profits from the misconduct or intentionally defeats the other spouse's distribution of marital assets. *Shetler v. Shetler*, 5th Dist. Stark No. 2008CA00036, 2009-Ohio-1581, ¶20.

{¶54} The trial court made the following finding of fact concerning financial misconduct:

32.  The Court finds that the Defendant/Wife seeks the Court to find that the Plaintiff/Husband engaged in financial misconduct due to his gambling.  The Court finds that the parties had sufficient funds to meet all of their living expenses during this period of time.  The Court further finds that the Plaintiff/Husband made no attempt to conceal his gambling from the Defendant/Wife.  The Court finds that the Defendant/Wife intentionally sought to mislead the Court as to the amount of the Plaintiff/Husband's gambling by including all his ATM cash withdrawals to include those that occurred outside of the country, at the airport and other locations unrelated

to gambling.  The Defendant/Wife further sought to intentionally mislead the Court by double counting fees and failing to account for refunds.  See Exhibit T.

**{¶55}** The court made the following conclusion of law:

30.  The Court concludes that the Defendant/Wife has failed to prove that the Plaintiff/Husband engaged in financial misconduct.   The Court concludes that funds used for gambling were disposable income which did not affect the parties' ability to meet day to day living expenses.  Moreover, there was no showing of any wrongful intent nor were there any actions taken to conceal assets.  The Court concludes that the Plaintiff/Husband's testimony that gambling was his hobby is credible and worthy of belief.

**{¶56}** Appellee testified that his wife was aware that he was gambling, and his gambling did not affect their ability to pay any of their marital debts. Tr. 84.  He testified that it did not impact their daily living, and was just "spending time."  Tr. 84.  Appellee testified that his wife benefitted from the profits he received when he won.  Tr. 85. Although he admitted to lying about winning when he was in fact losing (Tr. 85), the testimony supports the court's findings that gambling was a hobby, appellant was aware that appellee was gambling, and there was no showing of wrongful intent or actions taken to conceal assets.  The court's finding that appellant failed to prove financial misconduct is not against the manifest weight of the evidence.

**{¶57} Increase to mortgage balance on Dr. Sayegh's Cambridge office:** Appellant argues that the court arbitrarily increased the balance due on the mortgage on appellee's Cambridge office from $304,831.95 to $321,018.63.

{¶58} The parties stipulated to the admissibility of Huntington Bank records previously exchanged between them. They also stipulated that they would provide testimony and documentation as to their bank accounts without the testimony of record custodians. The document provided by Huntington Bank showed a beginning balance of $304,831.95 and a balance as of the date of the statement of $321,018.63. The trial court did not err in using the amount of the balance as set forth on the document stipulated to by the parties.

{¶59} **Arbitrary adoption of irreconcilable testimony regarding reimbursement to appellant for purchase of Zanesville home:** Appellant argues that appellee changed his testimony regarding repayment to her for the Zanesville home. She argues that appellee repeatedly changed his testimony concerning whether a $102,000.00 payment was for the Zanesville house, for Safita 1, or for Safita 2, and the court therefore erred in concluding that appellee reimbursed appellant for both the Zanesville home and Safita 1.

{¶60} Contra to appellant's argument, appellee did not testify "unambiguously" that the $102,000.00 in question was for the Zanesville home. On cross-examination, the following colloquy occurred:

Q. Okay. And in fact, later on, you gave her or put back into the account

to try to make up for some of this; is that correct?

A: We made – we made – yes, to be shared house 50/50. Tr. 132.

{¶61} It is not clear from appellee's response if he understood the question, as it is apparent from the transcript that the language barrier was an ongoing concern throughout the trial. In fact, the trial court allowed counsel for appellee to ask leading

questions while he was testifying because the court had difficulty following his accent and wanted to make sure he heard everything correctly.  Tr. 53.

{¶62}  Appellee testified that he gave appellant the $102,000.00 for the purchase of Safita 1.  Tr. 681-82.  He later testified that he gave her $102,000.00 for the Safita house and refunded her separately for the Zanesville house.  Tr. 696.  Although appellee's testimony concerning this money on cross-examination is at times confusing, the trial court was in the best position to determine the credibility of the witnesses, particularly in a case such as this where a language barrier creates confusion during questioning.  The court did not err in accepting appellee's testimony over appellant's concerning reimbursement for the Zanesville home.

{¶63} **Tracing:**  Appellant argues that the trial court's finding that she failed to trace $261,069.43 of separate property is against the manifest weight of the evidence.

{¶64}  R.C. 3105.171(A)(6)(a)(ii) defines "separate property" as "all real and personal property and any interest in real or personal property" that "was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(b) states: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." "Thus, traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property." *Peck v. Peck,* 96 Ohio App.3d 731, 734 (12th Dist.1994).

{¶65}  The characterization of property as separate or marital is a mixed question of law and fact. *Globokar v. Globokar,* 5th Dist. Stark No.2009CA00138, 2010–Ohio–1737. "Trial court decisions on what is presently separate and marital property are not

reversed unless there is a showing of an abuse of discretion." *Vonderhaar–Ketron v. Ketron,* 5th Dist. Fairfield No. 10CA22, 2010–Ohio–6593.

**{¶66}** Appellant and appellee both testified that she used her separate funds for marital purposes, and appellee agreed to reimburse her, and the court found that appellee had made such reimbursements.   Appellant also presented the testimony of Brian Long, a forensic accountant, to trace the money appellant deemed separate in her Chase accounts.

**{¶67}** However, on cross-examination, Long acknowledged that his method of tracing produced a negative balance of $208,000.00 in the "marital" column, and he acknowledged that because a negative balance of this magnitude could not exist, in reality this negative balance was paid off by the use of separate funds.   Appellee presented the testimony of Linda Sheridan who testified that if an account has limited funds and you are trying to separate those funds into both a marital and a separate "pot," once you have exhausted one, you have no choice but to draw from the other.  Tr. 659. From this testimony, the court could conclude that appellant used her separate funds for marital purposes, and her separate fund, which she attempted to trace into the current account, was then replenished with marital funds.  Despite the testimony that appellee reimbursed her for his half of certain expenditures made during the marriage, his "reimbursement" would have been made with marital funds.  The court's finding that appellant failed to trace her separate property into the Chase account was not against the manifest weight of the evidence.

**{¶68} Mathematical error regarding Mercedes:**   Appellant argues that the agreement of appellee to reimburse her $9,000.00 for the Mercedes replica should have

been deducted from appellee's distributive award.  Appellee concedes that the court erred in failing to do, and accordingly, we find the trial court erred in failing to deduct the $9,000.00 reimbursement for the Mercedes replica from the distributive award.

**{¶69}** The second assignment of error is sustained in part and overruled in part.

III.

**{¶70}** In her third assignment of error, appellant argues that the court erred in finding real property referred to in the proceedings as "Damascus" to be the separate property of appellee, obtained by gift/inheritance.

**{¶71}** We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm if the classification is supported by some competent, credible evidence. *Taub v. Taub,* 10th Dist. No. 08AP750, 2009–Ohio–2762, ¶ 15. Marital property is defined as "all real and personal property that is currently owned by either or both spouses ... that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i).

**{¶72}** However, marital property does not include any separate property. Separate property is defined in R.C. 3105.171(A)(6)(a) which states in pertinent part:

(i)      An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(vii)    Any gift or real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

**{¶73}** A party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof

generally by a preponderance of the evidence. *Zeefe v. Zeefe,* 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (8th Dist.1998).   However, when the party claims the separate property is a gift, the burden of proof is by clear and convincing evidence.  *Butler v. Butler,* 5th Dist. Holmes No. 12CA009, 2012-Ohio-6085, ¶24.   The gift exception in R.C. 3105.121(A)(6)(a)(vii) requires proof that the donor intended to benefit one of the spouses and that the donor intended to exclude the other spouse from acquiring any interest in the property through the gift that was made.  *Id.*

**{¶74}** The trial court made the following finding concerning the Damascus property:

11.    The Court finds that during the course of the marriage, the Plaintiff/Husband had real estate known as the Damascus house transferred to him (Exhibits WW and XX).  The Court finds that the parties have stipulated that the value of such residence is $300,000.00.  The Court further finds that the unrebutted testimony is that the Plaintiff/Husband paid a nominal amount of $300.00 (or fifteen thousand Syrian Pounds) for such residence as his father sought to transfer the property to him as a gift/inheritance prior to his death (Exhibit 24).  The Court finds that such gift/inheritance is further demonstrated by the life estates in the real estate which were retained by both the Plaintiff/Husband's father and his uncle. The Court finds that although the Plaintiff/Husband's father is recently deceased, his uncle still retains a life estate in such real estate such that the uncle is currently the person with control and possession of this property.

{¶75} Appellee testified that the Damascus property had been in his family since 1963, and was owned by his father and his uncle. Tr. 197. He testified that his father, who passed away a few weeks before trial, and his uncle, who was still living, needed to sell property now to avoid the government taking 50 percent after their death. He testified, "So this is my inheritance. This – they gave somebody – something to my brothers, other thing to my sister, and this is mine." Tr. 77. The translation of the Arabic deed reflects that the right of transfer belongs to appellee's father and uncle until they were deceased, and after death such right transfers automatically to appellee as the owner of the property. Appellee testified that he had no right to do anything with the house until his uncle died. Tr. 169.

{¶76} Based on the evidence before the court, the court did not err in finding the Damascus property to be separate. The undisputed evidence and the language of the deed demonstrate that appellee did not yet have the right to sell or transfer the property. Appellee's testimony that he "purchased" the property, valued at $300,000.00, for $300.00 in order to avoid the government taking 50 percent upon the death of his father and uncle supports the court's finding that the transfer was in fact a gift to appellee, and the de minimis purchase price was paid so that the deed would reflect a sale. Further, he testified that other property was given to his brothers and sister, which supports the court's conclusion that this was intended to be a gift to appellee alone. Although appellant argues that under Ohio law property cannot be both gift and inheritance, the testimony demonstrates that in Syria, the transfer by "sale" was in the nature of a gift in anticipation of inheritance, with the right to full ownership rights of the property passing to appellee

after the death of his uncle.  The finding of the trial court that the Damascus property was appellee's separate property is not against the manifest weight of the evidence.

**{¶77}**  The third assignment of error is overruled.

IV.

**{¶78}**  Appellant argues that the property referred to as Safita I, titled solely in her name and purchased with marital funds, was a gift to her from appellee and the court therefore erred in finding the property to be marital property.

**{¶79}** The holding of title to property by one spouse individually does not determine whether the property is marital property or separate property.    R.C. 3105.171(H). As noted above, appellant had to prove by clear and convincing evidence that Safita I was a gift to her.  *Butler, supra.*  We review the trial court's classification of property as marital or separate under a manifest weight of the evidence standard.  *Taub, supra.*

**{¶80}**  The trial court found that appellant provided no testimony or evidence to corroborate her claim that the property was a gift.  The property was purchased during the marriage and included roughly equal contributions by both parties.   Appellant testified that the property was put in her name only so no one could take it from her, even in the case of divorce.  Tr. 441.  She testified that he stated on more than one occasion that he was gifting her the house.  Tr. 442.  However, appellee testified that it was not a gift, and that he was not there when she did all the paperwork in Syria with her family.  Tr. 681. He also testified that at the time of the purchase it did not matter if the property was in her name because they were still married, "Her name is my name.  Her money is my money.

We are marriage. Half, half, everything. So it doesn't make big difference in her name or my name or her name only." Tr. 135.

**{¶81}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), *certiorari denied,* 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1997–Ohio–260. Based on the conflicting testimony, the court concluded that appellant failed to prove by clear and convincing evidence that the property was intended as a gift from appellee to her. This finding is not against the manifest weight of the evidence.

**{¶82}** The fourth assignment of error is overruled.

V.

**{¶83}** Appellant argues that the court erred in granting appellee's motion for Civ. R. 60(B) relief from judgment. This assignment of error is rendered moot by our disposition of the second assignment of error on cross-appeal.

**{¶84}** We next turn to the assignments of error raised by appellee on cross-appeal, and to the supplemental assignment of error filed by appellant.

I.

**{¶85}** In his first assignment of error on cross-appeal, appellee argues that the trial court exceeded the scope of the remand in dismissing his Civ. R. 60(B) motion. He argues that the limited remand was exclusively for the trial court to render a decision as to the allocation of financial responsibility for structural damages.

**{¶86}** In our entry remanding the instant case for conclusion of the Civ. R. 60(B) judgment, we stated as follows:

Because the ultimate disposition of the Civ. R. 60(B) motion could affect the property division in the instant matter and the issues before this Court on appeal, we sua sponte stay the instant appeal and remand to the trial court for the limited purpose of finishing its disposition of the Civ. R. 60(B) motion. The trial court shall issue final judgment on the Civ. R. 60(B) motion by thirty days from the date of the filing of this judgment entry.

**{¶87}** Contra to appellee's argument, this judgment was not a limited remand exclusively for the purpose of rendering a decision as to the allocation of financial responsibility for structural damages. Our entry did not conclusively resolve the propriety of the trial court's original ruling on the Civ. R. 60(B) motion, nor did it limit further proceedings to damages only. Rather, the case was remanded with instructions to finish its partial disposition of the Civ. R. 60(B) motion, which the trial court did in dismissing the motion for want of jurisdiction.

**{¶88}** Appellee also argues that the trial court was without jurisdiction to deny his motion for reconsideration of the entry dismissing his Civ. R. 60(B) motion. An order on a motion for reconsideration made after a final judgment is a nullity. *Treadway v. Treadway,* 5th Dist. Licking No. 01CA45, 2002-Ohio-229. However, the February 1, 2017, entry had no effect on the outcome of the case, and thus our review is limited solely to the court's January 17, 2017.

**{¶89}** The first assignment of error on cross-appeal is overruled.

II.

**{¶90}** In his second assignment of error on cross-appeal, appellee argues that the court erred in applying *Morris v. Morris,* 148 Ohio St. 3d 138, 69 N.E.3d 664, 2016-Ohio-5002 to the instant case.   He he argues that the court erred in applying *Morris* retroactively, and that *Morris* should not apply to the instant case.

**{¶91}** We first address appellee's claim that the court erred in applying *Morris* retroactively.    In the instant case, the court did not apply the *Morris* case retroactively. The court had not completed its disposition of the Civ. R. 60(B) motion in its November 23, 2015 entry, as discussed in our judgment remanding the case for further proceedings. Further, the "general rule is that an Ohio court decision applies retrospectively unless a party has contract rights or vested rights under the prior decision." *Wright v. Proctor-Donald*, 5th Dist. Stark 2012–CA–00154, 2013-Ohio-1973, ¶ 18, *citing DiCenzo v. A–Best Products Co., Inc.,* 120 Ohio St.3d 149, 156, 2008–Ohio–5327, 897 N .E.2d 132.

**{¶92}** In *Morris, supra,* the trial court used Civ. R. 60(B) to modify an award of spousal support.  The Court of Appeals for the Second District reversed, finding that R.C. 3105.18(E) established specific jurisdictional preconditions for modification which were not present.

**{¶93}** The Ohio Supreme Court concluded that Civ. R. 60(B) may not be used to modify an award of spousal support outside the parameters of R.C. 3105.18(E):

> Our precedent therefore establishes that substantive law controls the issue of when a trial court has jurisdiction to modify a spousal-support award contained in a decree of divorce or dissolution. R.C. 3105.18(E) is " 'that body of law which creates, defines and regulates the rights of the parties,' " to modify an award of spousal support. *Havel*, 131 Ohio St.3d 235, 2012-

Ohio-552, 963 N.E.2d 1270, at ¶ 16, quoting *Krause v. State*, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972), paragraph one of the syllabus, *overruled on other grounds, Schenkolewski v. Cleveland Metroparks Sys.,* 67 Ohio St.2d 31, 426 N.E.2d 784 (1981).

In R.C. 3105.18(E), the General Assembly has established the limits of a trial court's jurisdiction to modify an award of spousal support. And a party's request for modification falls within those statutory limits only if the parties agree or the court orders that jurisdiction be reserved. In other words, the trial court must first determine whether the decree of divorce or dissolution contains a reservation of jurisdiction. If the trial court lacks jurisdiction to modify, then the inquiry of the court ends there. To permit a trial court to exercise jurisdiction on the authority of Civ.R. 60(B) in the absence of a reservation of jurisdiction would make the force of the procedural rule greater in scope than the substantive right the General Assembly established in R.C. 3105.18(E). Because Civ.R. 60(B) is a procedural rule, it cannot override the substantive law of R.C. 3105.18(E). *See* Ohio Constitution, Article IV, Section 5(B).

**{¶94}** *Id.* at ¶¶56-57.

**{¶95}** Appellant attempts to distinguish *Morris* from the instant case which involves property division rather than spousal support, and a divorce rather than a dissolution. However, R.C. 3105.171(I) limits the jurisdiction of the trial court to modify a property division much as R.C. 3105.18(E) limits the jurisdiction of the trial court to modify spousal support. R.C. 3105.171(I) provides:

A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

**{¶96}** Based on the Ohio Supreme Court's decision in *Morris,* we conclude that to permit a trial court to exercise jurisdiction on the authority of Civ. R. 60(B) in the absence of the express written consent or agreement to the modification by both spouses would make the force of the procedural rule greater in scope than the substantive right established by the General Assembly in R.C. 3105.171(I).

**{¶97}** The second assignment of error on cross-appeal is overruled.

III.

**{¶98}** In his third assignment of error cross-appeal, appellee argues that the court correctly granted his Civ. R. 60(B) motion for relief from judgment on November 23, 2015. This assignment of error is rendered moot by our disposition of the second assignment of error on cross-appeal and is overruled.

IV., Supplemental Assignment VI.

**{¶99}** In his fourth assignment of error on cross-appeal, appellee argues that the court's judgment of November 23, 2015, granting Civ. R. 60(B) relief is not void *ab initio.* Appellant argues in her sixth assignment of error on cross-appeal that the judgment is void *ab initio.*

**{¶100}** A court's lack of subject-matter jurisdiction renders that court's judgment void *ab initio. Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶17. As discussed in the second assignment of error, the trial court was

without jurisdiction to grant Civ. R. 60(B) relief as to the property division in the instant case.  The November 23, 2015 judgment is therefore void *ab initio.*

**{¶101}**        The fourth assignment of error on cross-appeal is overruled. Appellant's sixth assignment of error is sustained.

**{¶102}**        The judgment of the Muskingum County Common Pleas Court, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.   Costs are assessed equally between the parties.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.